1
2
3
4
5

John Ray Nelson, WSBA #16393
Foster Garvey P.C.
618 W. Riverside Ave., Suite 300
Spokane, WA  99201-5102
Telephone: (509) 777-1600
Email: john.nelson@foster.com

6
7

*Counsel for Defendants Tyco Fire Products
LP and Chemguard, Inc.*

8
9
10
11
12

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
SPOKANE DIVISION

13
14
15
16
17
18
19

| | |
|---|---|
| AARON ABBOTT, *et al.*, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>THE 3M COMPANY, *et al.*,<br><br>        Defendants. | Case No.    2:20-cv-00307<br><br>NOTICE OF REMOVAL |

20
21
22
23
24
25
26

      Defendants Tyco Fire Products LP ("Tyco") and Chemguard, Inc. ("Chemguard"), by undersigned counsel, hereby give notice of removal of this action, pursuant to 28 U.S.C. §§ 1332(d), 1442(a)(1), and 1446, from the Superior Court of Spokane County, Washington, to the United States District Court for the Eastern District of Washington.  Tyco and Chemguard are entitled to remove this

FG:53802479.1

NOTICE OF REMOVAL - 1

FOSTER GARVEY P.C.
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON  99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

action under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). In the alternative, Tyco and Chemguard are also entitled to remove this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). As further grounds for removal, Tyco and Chemguard states as follows:

## PLAINTIFFS' SUMMONS AND COMPLAINT

1.     This action was filed on May 6, 2020, in the Superior Court of Spokane County, Washington, bearing Case No. 20201365-32. (Ex. A, Summons and Complaint.)

2.     On August 5, 2020, Tyco and Chemguard were served with the initial Summons and Complaint (Ex. A). There have been no further proceedings in this action in the Superior Court. Tyco and Chemguard file this Notice of Removal within 30 days of service of the Complaint. Thus, this Notice of Removal is timely filed. *See* 28 U.S.C. § 1466(b)(1).

3.     Venue for the removal of this action is proper in this Court pursuant to 28 U.S.C. §§ 128(a) and 1442(a) because the Superior Court of Spokane County, Washington, is located within the Eastern District of Washington.

4.     Tyco and Chemguard are not required to notify or obtain the consent of any other Defendant in this action to remove this action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253

FG:53802479.1

NOTICE OF REMOVAL - 2

(9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994). Likewise, Tyco and Chemguard are not required to notify or obtain the consent of any other Defendant in this action to remove this action as a whole under CAFA. *See* 28 U.S.C. § 1453(b) ("A class action … may be removed by any defendant without the consent of all defendants.").

5.     Plaintiffs are 578 individuals who allege that they have been inmates at the Airway Heights Correction Center ("AHCC") in Airway Heights, Washington. (Compl. ¶¶ 1.7, 3.1-3.1156.) According to the Complaint, AHCC is located "nearby and downgradient of" Fairchild Air Force Base ("Fairchild AFB"). (*Id.* ¶ 1.6.)

6.     Plaintiffs generally allege that Defendants, including Tyco and Chemguard, manufactured, marketed, and sold firefighting aqueous film-forming foam ("AFFF") that contained perfluorinated chemicals ("PFCs"), including perfluorooctane sulfonate ("PFOS") and/or perfluorooctanoic acid ("PFOA"). (*See, e.g.*, *id.* ¶¶ 1.23, 3.1160-3.1195, 4.26-4.27.) Plaintiffs allege that these AFFF products were used at Fairchild AFB during firefighting training exercises conducted by the United States Air Force, and that PFCs were released into the groundwater from Fairchild AFB. (*See, e.g.*, *id.* ¶¶ 1.1-1.3, 4.28-4.36.) The

**FOSTER GARVEY P.C.**
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

release of PFCs from Fairchild AFB allegedly has contaminated the water supply for AHCC and the surrounding communities, resulting in threat or injury to drinking water and public health.  (*See, e.g.*, *id.* ¶¶ 1.5-1.6, 1.11-1.21, 1.29-1.43, 4.16-4.25.)

7.    Each Plaintiff alleges that, "[a]s a result of his exposure to the contaminated water at AHCC," he or she has "high blood pressure due to the PFOS and PFOA in his blood which carries a heightened risk of developing several health conditions, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, hypertension, ulcerative colitis, fertility issues, and kidney cancer."  (*Id.* ¶¶ 3.1-3.1156.)  One-hundred forty one Plaintiffs also allege additional injuries including—among others—"kidney problems" (*e.g.*, *id.* ¶ 3.4); "liver cysts" (*id.* ¶ 3.58); "hepatitis C" (*e.g.*, *id.* ¶ 3.72); "thyroid issues" (*e.g.*, *id.* ¶ 3.122); "heart attacks" (*e.g.*, *id.* ¶ 3.218); "kidney failure" (*id.* ¶ 3.230); "loss of memory" (*id.* ¶ 3.492); "cancer on his back" (*id.* ¶ 3.522); "emphysema" (*id.* ¶ 3.570); "weight gain" (*e.g.*, *id.* ¶ 3.676); "liver issues" (*e.g.*, ¶ 3.682);  "cognitive impairment" (*id.* ¶ 3.692); "depression [and] impotence" (*id.* ¶ 3.790); "holes in skin" (*id.* ¶ 3.852); "hyperthyroidism" (*id.* ¶ 3.936); "rashes" (*e.g.*, *id.* ¶ 3.1048); "skin cancer" (*id.*

FOSTER GARVEY P.C.
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

¶ 3.1062); "anemia" (*id*. ¶ 3.1148); "strokes, seizures, … kidney stones, [and] anal bleeding" (*id*. ¶ 3.1150).

8.    Plaintiffs allege, among other things, that Defendants' AFFF products were defectively designed (*id.* ¶ 6.62), and assert claims against Defendants including Tyco and Chemguard for negligence (*id.*, First Cause of Action), medical monitoring (*id.*, Second Cause of Action), products liability – failure to warn (*id.*, Third Cause of Action), products liability – defective design (*id.*, Fourth Cause of Action), and punitive damages (*id.*, Sixth Cause of Action).[1]

9.    Plaintiffs seek to represent a "Medical Monitoring Class" comprised of "[i]ndividuals who consumed water from their municipal water supplier, smaller water systems, or domestic water supply wells in" AHCC or the surrounding communities of Airway Heights and Medical Lake, Washington.  (*Id*. ¶ 5.2.) Plaintiffs assert that this class "is composed of" two putative subclasses.  (*Id*.)  The first putative subclass is "[a]ll individuals, prisoners, and inmates that reside at

---

[1] Plaintiffs also bring a claim for Violation of the Uniform Voidable Transactions Act against E.I. Du Pont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., and Du Pont de Nemours, Inc., only. (Compl., Fifth Cause of Action.)

FG:53802479.1

NOTICE OF REMOVAL - 5

FOSTER GARVEY P.C.
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON  99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

AHCC who have consumer water provided by the Airway Heights Water and Sanitation District." (*Id.*)   The second putative subclass is "[a]ll individuals, prisoners, and inmates that never resided at AHCC but who have consumed food prepared at AHCC with water provided by the Airway Heights Sanitation District." (*Id.*)

10.   Plaintiffs seek "[a]n order establishing a medical monitoring protocol," as well as "[a]n award to Plaintiff and the Class of general, compensatory, exemplary, consequential, nominal, and punitive damages." (*Id.*, Prayer For Relief.)   Plaintiffs additionally seek declaratory relief; class certification; attorneys' fees; and pre-judgment and post-judgment interest. (*Id.*)

11.   Pursuant to 28 U.S.C. § 1446(d), Tyco and Chemguard are serving a copy of this Notice of Removal upon all other parties to this case, and Tyco and Chemguard are filing a copy with the Clerk of the Superior Court of Spokane County, Washington.

12.   By filing a Notice of Removal in this matter, Tyco and Chemguard do not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and Tyco and Chemguard specifically reserve the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

FG:53802479.1

NOTICE OF REMOVAL - 6

13.     Tyco and Chemguard reserve the right to amend or supplement this Notice of Removal.

14.     If any question arises as to the propriety of the removal of this action, Tyco and Chemguard request the opportunity to present a brief and oral argument in support of removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(A)(1)

15.     Removal here is proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer.  Removal is appropriate under this provision where the removing defendant establishes that: (1) the defendant is a "person" under the statute; (2) the defendant was "acting under" the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) the defendant was acting "under color of" federal office at the time of the allegedly tortious conduct; and (4) the defendant raises a "colorable" federal defense.  *See, e.g.*, *Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989); *Goncalves by and through Goncalves v. Rady Children's Hosp. S.D.*, 865 F.3d 1237, 1244 (9th Cir. 2017); *Durham*, 445 F.3d at 1251.

FG:53802479.1

NOTICE OF REMOVAL - 7

FOSTER GARVEY P.C.
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

16.     For the reasons stated below (¶¶ 22-38), all requirements for removal under § 1442(a)(1) are satisfied here.  Plaintiffs seek to hold Tyco, Chemguard, and certain other Defendants liable based on their alleged conduct in designing, manufacturing, and selling AFFF products which were developed for sale to the United States military and others pursuant to government contracts and in accordance with the military's rigorous specifications.  Tyco and Chemguard intend to assert the federal "government contractor" defense in response to Plaintiffs' claims.  As multiple courts have previously ruled in similar cases brought against AFFF manufacturers, Tyco and Chemguard are entitled to remove this action under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), to have their federal defense adjudicated in a federal forum.  *See, e.g.*, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.* ("*In re AFFF*"), No. 2:18-mn-2873, 2019 WL 2807266, at *2 (D.S.C. May 24, 2019); *Ayo v. 3M Comp.*, 2018 WL 4781145, at *6-15 (E.D.N.Y. Sept. 30, 2018).  Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

**FOSTER GARVEY P.C.**
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

17.    Removal rights under the federal officer removal statute, 28 U.S.C. § 1442, are much broader than under the general removal statute, 28 U.S.C. § 1441.   Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law."  *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999).    This is because § 1442 "protect[s] federal officers" and "guarantee[s] its agents access to a federal forum if they are sued or prosecuted." *Durham*, 445 F.3d at 1253.  This important federal policy "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)."  *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).  To the contrary, the statute must be "liberally construed" in favor of removal.  *Durham*, 445 F.3d at 1252 (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)).

18.    Indeed, Plaintiffs' claims here are similar to those asserted in other cases that have been removed to federal court by Tyco, Chemguard, and/or certain other Defendants in this action and subsequently transferred by the Judicial Panel on Multidistrict Litigation ("JPML") to the District of South Carolina for inclusion in the *In re AFFF* MDL.  For example, *State of New York v. 3M Company*, No. 2:19-cv-01022 (D.S.C.), involves allegations that the State of New York's groundwater has been contaminated with PFOS and PFOA from AFFF usage by

FG:53802479.1

NOTICE OF REMOVAL - 9

the United States Air Force and Air National Guard at military bases in New York, purportedly resulting in public health risks. After Tyco removed the case pursuant to § 1442(a)(1), the State of New York moved to remand the case to state court. Following transfer to the *In re AFFF* MDL, Judge Richard Gergel denied the motion, holding that Tyco had satisfied all elements of the federal officer removal statute, "entitling Tyco to have removed New York's tort claims and Tyco's federal defense to federal court." *In re AFFF*, 2019 WL 2807266, at *2-3; *see also, e.g.*, *Ayo*, 2018 WL 4781145, at *6-15 (in case subsequently transferred to the MDL, denying motion to remand and finding that federal officer removal was proper in case against Tyco, Chemguard, and other manufacturers of AFFF).[2]

---

[2] Shortly before Plaintiffs filed this action, the Washington State Department of Corrections ("DOC") filed a separate action in the Eastern District of Washington against the United States Government, alleging that the United States Air Force is liable for $2,450,000 in damages that DOC incurred in connection with contamination of AHCC's water supply from AFFF usage at the Fairchild AFB. *See Washington State Dep't of Corr. v. United States of America*, No. 2:20-cv-00159, Complaint, Dkt. 1, ¶¶ 2.2, 3.1, 3.20-22, 6.1 (E.D. Wash. April 21, 2020). On May 27, 2020, the JPML transferred the DOC's action to the *In re AFFF* MDL.

**FOSTER GARVEY P.C.**
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600   FAX (509) 777-1616

## A. MilSpec AFFF

19.     Since the 1960s, the United States military has used AFFF that meets military specifications ("MilSpec AFFF") on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property.  Indeed, the United States Naval Research Laboratory developed AFFF with assistance from industry participants, and its researchers were granted the first AFFF patent in 1966.[3] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[4]

---

*See id.*, Dkt. 3.  As a result, that case is already pending before Judge Gergel in the MDL. *See* No. 2:20-cv-02030 (D.S.C. filed May 27, 2020).  Tyco and Chemguard anticipate that the JPML will transfer this case to the *In re AFFF* MDL as well.

[3] U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).

[4] U.S. Navy, NRL/MR/1001-06-8951, U.S. Naval Research Lab., The U.S. Naval Research Laboratory (1923-2005): Fulfilling the Roosevelts' Vision for American Naval Power, at 37 (June 30, 2006) ("Fulfilling the Roosevelts' Vision"), http://bit.ly/2mujJds.

FG:53802479.1

NOTICE OF REMOVAL - 11

FOSTER GARVEY P.C.
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

20.    The manufacture and sale of AFFF procured by the military is governed by rigorous military specifications created and administered by Naval Sea Systems Command.[5]  All such AFFF products must be "qualified for listing on the applicable Qualified Products List" prior to military procurement.[6]  Prior to such listing, a "manufacturer's . . . products are examined, tested, and approved to be in conformance with specification requirements."[7]  The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.[8]

---

[5] *See* Mil-F-24385 (1969). The November 1969 MilSpec and all its revisions and amendments through 2020 are available at https://tinyurl.com/yxwotjpg. The 2020 amendment is attached as Ex. B.

[6] Ex. B, MIL-PRF-24385F(4) § 3.1 (2020).

[7] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[8] *See, e.g.*, Ex. B, MIL-PRF-24385F(4) at 18 (2020). The cited MilSpec designates Naval Sea Systems Command as the "Preparing Activity." The "Preparing Activity" is responsible for qualification.  (*See* Dep't of Defense SD-6, *supra* note 7, at 3.)

FG:53802479.1

NOTICE OF REMOVAL - 12

**FOSTER GARVEY P.C.**
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[9]  Naval Sea Systems Command "reserves the right to perform any of the [quality assurance] inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements."[10]

21.    From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants," the chemical class that includes PFOA and PFOS.[11]  The current MilSpec expressly

---

[9] Dep't of Defense SD-6, *supra* note 7, at 1.

[10] *See, e.g.*, Ex. B, MIL-PRF-24385F(4) § 4.1 (2020).

[11] *See* Mil-F-24385 § 3.2 (1969); MIL-PRF-24385F(2) § 3.2 (2017).  In May 2019, the MilSpec was revised to drop the explicit requirement that the surfactants in the product be "fluorocarbon." *See* MIL-PRF-24385F(3) § 3.2 (2019). But under current technology, the only AFFF products capable of meeting the MilSpec's stringent performance requirements—and the only ones listed on the military's Qualified Product List—are those containing fluorocarbon surfactants. Thus, as a practical matter, the MilSpec still requires fluorocarbon surfactants.

FG:53802479.1

NOTICE OF REMOVAL - 13

**FOSTER GARVEY P.C.**
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

contemplates the presence of PFOA and PFOS (subject to recently imposed limits) in AFFF formulations.[12]  Indeed, the current MilSpec recognizes that it is not yet technically feasible for manufacturers to completely eliminate PFOA and PFOS "while still meeting all other military specification requirements."[13]

## B.     The "Person" Requirement Is Satisfied

22.     The first requirement for removal under the federal officer removal statute is satisfied because Tyco and Chemguard (corporations) are "persons" under the statute.   For purposes of § 1442(a)(1), the term "person" includes "'companies, associations, firms, [and] partnerships.'"   *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting 1 U.S.C. § 1).   The Ninth Circuit has likewise recognized that a non-natural entity is a "person" for purposes of § 1442(a)(1).  *See Goncalves*, 865 F.3d at 1244.

## C.     The "Acting Under" Requirement Is Satisfied

23.     The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer. *Goncalves*, 865 F.3d at 1245.   The words "acting under" are to be interpreted

---

[12] *See* Ex. B, MIL-PRF-24385F(4) § 6.6 & Tables 1, 3 (2020).

[13] *Id.* § 6.6.

**FOSTER GARVEY P.C.**
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON  99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

broadly. *Id.* Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813.

24.     The requirement is met here because Plaintiff challenges Defendants' alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission critical military product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members). The Naval Research Laboratory has stated that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[14] Accordingly, the military has long depended upon outside contractors like Tyco and Chemguard to develop and supply AFFF. *See Ayo*, 2018 WL 4781145, at *8-9 (holding that Defendants were

---

[14] *Fulfilling the Roosevelts' Vision* at 37.

FOSTER GARVEY P.C.
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

"acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *In re AFFF*, 2019 WL 2807266, at *2 (finding that "acting under" requirement was satisfied because Tyco demonstrated it was manufacturing AFFF under the guidance of the U.S. military).

25.    Plaintiff's own allegations show that Tyco and Chemguard were "acting under" federal officers of the Department of Defense and its agencies when designing, manufacturing, and selling MilSpec AFFF products allegedly used at Fairchild AFB.  The complaint alleges that Tyco, Chemguard and other Defendants "manufactured AFFF containing PFC's for sale to the Department of Defense or the U.S. Air Force"; their AFFF products "were used at Fairchild AFB"; PFCs were released into the environment and groundwater due to AFFF usage at Fairchild AFB during military "firefighting training" as well as "function testing" of fire suppression systems; and the United States Air Force has "confirmed the use of AFFF at Fairchild AFB and that the fire training area on the base was the source of PFC contamination of the groundwater supply."  (Compl. ¶¶ 4.26-4.27, 4.30-4.32, 4.36; *see also, e.g.*, *id*. ¶¶ 1.6, 1.23, 3.1161, 4.7, 4.14.)  Thus, Plaintiffs attribute the alleged water contamination to AFFF usage at Fairchild AFB where MilSpec AFFF would have been used.

FOSTER GARVEY P.C.
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON  99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

26.    In designing, manufacturing, and supplying the MilSpec AFFF products at issue, Tyco and Chemguard acted under the direction and control of one or more federal officers.    Specifically, Tyco and Chemguard acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.[15]  Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the United States Department of Defense.[16]

**D.    The Causation Requirement Is Satisfied**

27.    The third requirement, that a defendant's actions were taken "under color of federal office … has come to be known as the causation requirement." *Isaacson*, 517 F.3d at 137 (internal quotation marks, alterations, and citation omitted).    Like the "acting under" requirement, the "hurdle erected by this requirement is quite low." *Goncalves*, 865 F.3d at 1245 (quoting *Isaacson*, 517

---

[15] *See* Mil-F-24385 (1969) and subsequent revisions and amendments, cited in note 5, *supra*.

[16] *See* Dep't of Defense SD-6, *supra* note 7, at 1.

FOSTER GARVEY P.C.
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

F.3d at 137).  Courts "credit Defendants' theory of the case when determining whether [this] causal connection exists." *Isaacson*, 517 F.3d at 137.[17]

28.    "To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were performing their official duties."  *Isaacson*, 517 F.3d at 137–38; *Papp*, 842 F.3d at 813 (explaining that in order to meet the causation requirement, it is "sufficient for there to be a connection or association between the act in question and the federal office").

29.    Here, Plaintiffs' claims against Tyco and Chemguard arise at least in part from their production and sale of AFFF according to military specifications. Plaintiffs allege that the use of PFOS and PFOA in AFFF rendered Tyco's and Chemguard's products defective.  Tyco and Chemguard contend that the use of such chemicals was required by military specifications.  The conflict is apparent: MilSpec AFFF was developed for use by the military, and was designed to meet

---

[17] The "Acting Under" and "Under Color Of" prongs overlap. *See, e.g.*, *Durham*, 445 F.3d at 1251. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht v. A.O. Smith Water Prods.*, 2011 WL 5109532, at *5 (S.D.N.Y. 2011).

FOSTER GARVEY P.C.
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

specifications established by the Department of Defense. The design choices that Plaintiffs are attempting to impose via state tort law would create a conflict in which Tyco and Chemguard could not "comply with both [their] contractual obligations and the state-prescribed duty of care." *Boyle v. United Tech. Corp.*, 487 U.S. 500, 509 (1988); *see also Ayo*, 2018 WL 4781145, at \*9 ("[T]here is evidence of a 'causal connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); *accord In re AFFF*, 2019 WL 2807266, at \*3.

30.     Although Plaintiffs allege that "Defendants could have manufactured, marketed, or sold alternative deigns or formulations of AFFF that did not contain PFOA or PFOS" that "would have reduced or prevented the reasonably foreseeable harm" allegedly caused by AFFF (Compl. ¶¶ 6.57, 6.59), that is both incorrect and immaterial. Plaintiffs cannot defeat federal-officer removal based on allegations directly at odds with the MilSpec and the judgment of the federal officers who administer it. Further, "even if Plaintiff[s] were to prove that the [alleged] contamination occurred because of an act not specifically contemplated by the government contract, it is enough that the contracts gave rise to the contamination." *Isaacson*, 517 F.3d at 138. "[W]hether the challenged act was outside the scope of Defendants' official duties, or whether it was specifically

FG:53802479.1

NOTICE OF REMOVAL - 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

directed by the federal Government, is one for the federal—not state—courts to answer." *Id.*

**E.    The "Colorable Federal Defense" Requirement Is Satisfied**

31.    The fourth requirement ("colorable federal defense") is satisfied by Tyco's and Chemguard's assertion of the government contractor defense.    The Ninth Circuit has recognized that this defense supports removal under § 1442(a)(1). *See Leite v. Crane Co.*, 749 F.3d 1117, 1124 (9th Cir. 2014).

32.    At the removal stage, a defendant need only show that its government contractor defense is "colorable."  *Leite*, 749 F.3d at 1124 (quoting *Jefferson Cty.*, 527 U.S. at 407).  "To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." *Isaacson*, 517 F.3d at 139 (citation omitted).  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014) (quoting *Kircher v. Putnam Funds Trust*, 547

FG:53802479.1

NOTICE OF REMOVAL - 20

**FOSTER GARVEY P.C.**
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

U.S. 633, 644 n. 12 (2006)).[18]  Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants."  *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010).  "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'"  *Cuomo*, 771 F.3d at 116 (citation omitted).

33.     Under the government contractor defense, the defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  *Boyle*, 487 U.S. at 512.

---

[18] *See also Kraus v. Alcatel-Lucent*, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense.").

FOSTER GARVEY P.C.
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

34.    Tyco and Chemguard have satisfied these elements for purposes of removal.  As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.[19]  Indeed, Tyco's and Chemguard's products appeared on the DOD Qualified Products Listing,[20] which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec.[21]  *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA, in their products."); *see also id.* ("There is also

---

[19] *See* Mil-F-24385 (1969) and subsequent revisions and amendments, cited in note 5 *supra*.

[20]  MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014), http://www.dcfpnavymil.org/Systems/AFFF/QPL%2024385%20HISTORY%20-%20TYPE%203.pdf; MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014), http://www.dcfpnavymil.org/Systems/AFFF/QPL%2024385%20HISTORY%20-%20TYPE%206.pdf.

[21] *See* Dep't of Defense SD-6, *supra* note 7, at 1.

FOSTER GARVEY P.C.
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

colorable evidence … that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); *In re AFFF*, 2019 WL 2807266, at \*3 (finding that Tyco demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

35.    Moreover, the U.S. government was adequately informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand.[22] Indeed, it is clear that the United States has long understood that AFFF may contain or break down into PFOS and/or PFOA, that AFFF constituents can migrate through the soil and potentially reach groundwater, and that it has been reported that this may raise environmental or health issues.[23]

---

[22] *See, e.g.*, MIL-F-24385 §§ 3.16 & 4.7.16 (Rev. May 2, 1977).

[23] *See, e.g.*, EPA, Revised Draft Hazard Assessment of Perfluorooctanoic Acid and its Salts, at 1-6 (Nov. 4, 2002) (excerpt).

**FOSTER GARVEY P.C.**
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

36.     In fact, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally."[24]  In June 1991, the Air Force stated that past Air Force fire training activities resulted in "adverse environmental impact," including "soil contamination" and the "potential" for "groundwater contamination."[25]  More recently, in a November 2017 report to Congress, the Department of Defense acknowledged the concerns raised by the EPA regarding PFOS and PFOA in drinking water.  Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based

---

[24] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), http://www.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[25] USAF, Engineering Technical Letter ETL 91-4: Site Selection Criteria for Fire Protection Training Areas 2 (June 14, 1991).

FG:53802479.1

NOTICE OF REMOVAL - 24

FOSTER GARVEY P.C.
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

fires."[26]  Until just earlier this year, Naval Sea Systems Command continued to expressly require that MilSpec AFFF contain "fluorocarbon surfactants,"[27] and even today the MilSpec contemplates the presence of "PFOS" and "PFOA" in AFFF formulations.[28]  *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); *In re AFFF*, 2019 WL 2807266, at *3 ("As to whether Tyco adequately informed the U.S. military of dangers associated with its AFFF products of which the military were not already aware, Tyco points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA's] stated concerns with PFOS/PFOA in drinking water . . . .").

37.    At a minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the

---

[26] Dep't of Defense, Aqueous Film Forming Foam Report to Congress, at 1-2 (Oct. 2017) (pub. Nov. 3, 2017).

[27] *See* MIL-PRF-24385F(2) § 3.2 (2017).

[28] Ex. B, MIL-PRF-24385F(4) § 6.6 & Tables 1, 3 (2020).

**FOSTER GARVEY P.C.**
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht v. A.O. Smith Water Prods.*, 2011 WL 5109532, at *5 (S.D.N.Y. 2011) ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'") (citation omitted). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d at 89-90.

38.    Accordingly, Tyco and Chemguard are entitled to remove this action to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

## **ALTERNATIVELY, THIS CASE IS REMOVABLE UNDER CAFA**

39.    CAFA provides a separate and independent ground for removal of this action. CAFA "provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)). To determine whether the amount in

FG:53802479.1

NOTICE OF REMOVAL - 26

controversy requirement under CAFA is satisfied, "the claims of the individual class members shall be aggregated." *Id.* (quoting § 1332(d)(6)).

## A.     The Numerosity Requirement Is Satisfied.

40.     Plaintiffs invoke Washington Superior Court Rule 23, and seek to represent other persons on a class action basis as alleged in the Complaint. (Compl. ¶ 5.2.)   Accordingly, this case is a "class action" within the meaning of CAFA because it is brought pursuant to a "State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).

41.     The numerosity requirement is easily satisfied.   The 578 named Plaintiffs alone would satisfy the numerosity requirement that the putative class have more than 100 members, and they seek to represent a putative class composed of "[a]ll individuals, prisoners, and inmates that reside at AHCC," as well as "[a]ll individuals, prisoners, and inmates that never resided at AHCC but who have consumed food prepared at AHCC."   (Compl. ¶ 5.2.)   The Complaint further alleges that, "[u]pon information and belief, the number [of putative class members] could reach into the thousands."   (*Id*. ¶ 5.6.)   Indeed, the Washington Department of Corrections website represents that AHCC has a capacity of "2,258

FOSTER GARVEY P.C.
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

male inmates."[29]   And the website for Washington State Correctional Industries—which operates the Airway Heights Food Operations (*id*. ¶ 1.20)—states that the "food factory" at AHCC "supports 200 incarcerated workers," "represents the primary source of food production for Washington's prison system," and "support[s] the feeding of about 16,000 people."[30]   Accordingly, this action satisfies the requirement for removal that "the number of members of all proposed plaintiff classes in the aggregate" is equal to or greater than 100. 28 U.S.C. § 1332(d)(5)(B).  Again, even the number of named Plaintiffs here exceeds 100.

**B.     The Minimal Diversity Requirement Is Satisfied.**

42.     The minimal diversity requirement is met if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2).

43.     Defendant Tyco is alleged to be a Delaware corporation with its principal place of business in Pennsylvania.  (Compl. ¶¶ 3.1166.)  The allegation as to Tyco's principal place of business is incorrect.  In fact, Tyco's principal place of

---

[29] https://www.doc.wa.gov/corrections/incarceration/prisons/ahcc.htm.

[30] https://www.washingtonci.com/about-ci/where-we-are/ahcc.html.

FG:53802479.1

NOTICE OF REMOVAL - 28

**FOSTER GARVEY P.C.**
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

business is in Marinette, Wisconsin.[31] Thus, Tyco is a citizen of Delaware and Wisconsin, and the minimal diversity requirement is satisfied here if any single member of the putative class is a citizen of a state other than Wisconsin and Delaware. That is obviously the case here.

44.     The putative class allegedly includes thousands of individuals who reside at AHCC—a minimum and medium security prison[32]—or at other Washington State correctional facilities. (*See supra* ¶ 41.) "Prisoners are generally citizens of the state where they were domiciled at the time of their incarceration." *Wylie v. Cty. of Silver Bow/City of Butte*, 2012 WL 1097290, at *4 (D. Mont. Feb. 28, 2012). Upon information and belief, at least one of the Plaintiffs or other putative class members was domiciled in Washington at the time of their incarceration in a correctional facility in Washington. And to the extent that Plaintiffs or class members include individuals who were previously incarcerated at a Washington State correctional facility, upon information and belief, at least

---

[31] This inaccuracy are immaterial for present purposes. The dispositive point, discussed *infra*, is that at least one Plaintiff or absent member of the putative class is a citizen of Washington, and thus minimally diverse from Tyco.

[32] https://www.doc.wa.gov/corrections/incarceration/prisons/ahcc.htm.

FOSTER GARVEY P.C.
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

one of those individuals is domiciled in Washington now.  Thus, upon information and belief, at least one Plaintiff or absent member of the putative class is a citizen of Washington, and thus minimally diverse from Tyco, which is a citizen of Wisconsins and Delaware.

45.     Even if Plaintiffs implausibly asserted that there is not minimal diversity with Tyco because all members of the putative class might be citizens of Wisconsin or Delaware, there would still be minimal diversity: If all class members were citizens of Wisconsin or Delaware, they would necessarily be diverse from *other* Defendants, *e.g.*, Defendant 3M, which allegedly is has its principal place of business in Minnesota, and thus is a citizen of Minnesota. (Compl. ¶ 3.1162.)   Again, 28 U.S.C. § 1332(d)(2) provides that the minimal diversity requirement is met if "*any* member of a class of plaintiffs is a citizen of a State different from *any* defendant."  (Emphasis added.)

46.     Accordingly, the minimal diversity requirement is satisfied.

## C.     The Amount In Controversy Requirement Is Satisfied.

47.     Under CAFA, the amount in controversy must exceed five million dollars ($5,000,000), exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(2). In a putative class action, the amount in controversy is determined by aggregating the claims of all members of the putative class.  *See* 28 U.S.C. § 1332(d)(6).  The

FG:53802479.1

NOTICE OF REMOVAL - 30

**FOSTER GARVEY P.C.**
618 W. Riverside, Suite 300
Spokane, Washington  99201-5102
Phone (509) 777-1600  Fax (509) 777-1616

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Supreme Court has made clear that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see also, e.g.*, *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924-25 (9th Cir. 2019); 28 U.S.C. § 1446(c)(2) ("the notice of removal may assert the amount in controversy"). Moreover, in "actions seeking declaratory . . . and injunctive relief, it is well established that the amount in controversy" may be "measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). The Court may also consider claims for punitive damages and attorneys' fees as part of the jurisdictional amount. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) (punitive damages); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (attorneys' fees).

48.     The amount in controversy in this action exceeds five million dollars ($5,000,000) in the aggregate. The Complaint seeks "a medical monitoring protocol" as well as "general, compensatory, exemplary, consequential, nominal, and punitive damages" and "attorneys' fees" (Compl., Prayer For Relief), on behalf of putative class members whose number may "reach into the thousands." (*Id.* ¶ 5.6.) As alleged above (¶ 41), the "food factory" at AHCC provides food for

FOSTER GARVEY P.C.
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

"about 16,000" individuals who reside in Washington State prisons;[33] therefore, upon information and belief, the number of putative class members "who reside at AHCC" or "have consumed food prepared at AHCC" (Compl., ¶ 5.2) appears to be at least around 16,000.  Indeed, that number may be far greater to the extent that the putative class also includes individuals who no longer reside at AHCC or another Washington State correctional facility but who previously consumed food prepared at AHCC while they were incarcerated.

49.     Further, the Complaint identifies "several health conditions" for which all Plaintiffs allegedly are at a risk—including "effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, hypertension, ulcerative colitis, fertility issues, and kidney cancer"—and identifies 141 Plaintiffs who allegedly have other health conditions.  (*Id.* ¶¶ 3.1-3.1156; *see also supra* ¶ 6.) Plaintiffs allege that their claims are typical of those of the putative class members. (*Id.* ¶ 5.8.)

50.     According to the Complaint, "Plaintiffs and the Classes seek damages from Defendants . . . in a sufficient amount to compensate them for the injuries and losses sustained including injuries to persons, including the need for medical

---

[33] https://www.washingtonci.com/about-ci/where-we-are/ahcc.html.

FG:53802479.1

NOTICE OF REMOVAL - 32

**FOSTER GARVEY P.C.**
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON  99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616

monitoring as an element of damages, and actual, consequential, and nominal damages, flowing from the negligence which are the natural and proximate result of Defendants' conduct in an amount to be proved at trial." (Compl. ¶ 6.26.)

51.     Given the potential number of putative class members, the range of health conditions that the requested medical monitoring protocol allegedly would have to encompass, and the breadth of the alleged damages and other relief sought, it is apparent that the aggregate amount in controversy is greater than five million dollars ($5,000,000), exclusive of interest and costs.  Plaintiffs' allegations of injury are similar to others that have been found to satisfy the amount in controversy requirement.  For example, in *In re Welding Fume Products Liability Litigation*, 245 F.R.D. 279 (N.D. Ohio 2007), the court overseeing the multidistrict litigation held that "the aggregate cost of the medical monitoring program and other relief" requested on behalf of a putative class of thousands of welders allegedly exposed to toxic fumes "easily" exceeded the $5,000,000 jurisdictional amount.  *Id*. at 287.  *See also, e.g.*, *Ventimiglia v. Tishman Speyer Archstone-Smith Westbury, L.P.*, 588 F. Supp. 329, 335 (E.D.N.Y. 2008) (complaint seeking "ongoing diagnostic, curative, and preventative medical care" and other relief on behalf of "more than one thousand" putative class members "place[d] $5 million in controversy").

**FOSTER GARVEY P.C.**
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600   FAX (509) 777-1616

52.    Accordingly, although Tyco and Chemguard deny that Plaintiffs or any putative class members are entitled to recover any amount, and deny that Plaintiffs or putative class members are entitled to any of the relief sought, the amount in controversy requirement for removal under CAFA is satisfied.

53.    Because the numerosity, minimal diversity, and amount in controversy requirements of CAFA are satisfied, this case is subject to removal to federal court.

WHEREFORE, Tyco and Chemguard hereby remove this action from Superior Court of Spokane County, Washington, to the United States District Court for the Eastern District of Washington.


Dated:  August 26, 2020.

Respectfully submitted,

*s/ John Ray Nelson*
John Ray Nelson, WSBA #16393
FOSTER GARVEY P.C.
618 W. Riverside, Ste. 300
Spokane, WA  99201
Email:  john.nelson@foster.com

***Attorneys for Defendants Tyco Fire Products LP and Chemguard, Inc.***

FG:53802479.1

NOTICE OF REMOVAL - 34

## CERTIFICATE OF SERVICE

I certify that on August 26, 2020, I caused a true and correct copy of the foregoing **NOTICE OF REMOVAL**, with its Exhibits, to be served on the following parties by US Mail:

| | |
|---|---|
| ***Counsel for Plaintiffs*** <br> Michael Blue <br> The Law Office of Michael Blue, P.S. <br> 3213 West Wheeler Street, #58 <br> Seattle, WA 98199 | E.I. DuPont De Nemours & Company <br> 974 Centre Road <br> Wilmington, DE 19805 |
| ***Defendants*** <br> 3M Company <br> 3M Center <br> St. Paul, MN 55122 | The Chemours Company <br> 1007 Market Street <br> Wilmington, DE 19899 |
| National Foam, Inc. <br> 144 Junny Road <br> Angier, NC 27501 | Du Pont De Nemours Inc. <br> 1999 Bryan Street, Suite 900 <br> Dallas, TX 75201 |
| Buckeye Fire Equipment Company <br> 110 Kings Road <br> Mountain, NC 28086 | DuPont Chemical Solutions Enterprise <br> 1007 Market Street <br> Wilmington, DE 19899 |
| Dynax Corporation <br> 103 Fairview Park Drive <br> Elmsford, NY 10523 | The Chemours Company FC, LLC <br> 1007 Market Street <br> Wilmington, DE 19899 |
| | Corteva, Inc. <br> 974 Centre Road <br> Wilmington, DE 19805 |

*s/Julie Robertson*
Julie Robertson
Legal Assistant

FG:53802479.1

NOTICE OF REMOVAL - 35

**FOSTER GARVEY P.C.**
618 W. RIVERSIDE, SUITE 300
SPOKANE, WASHINGTON 99201-5102
PHONE (509) 777-1600  FAX (509) 777-1616